IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOE ARD,                                    )
                                            )
    Plaintiff,                              )
                                            )
v.                                          )     CASE NO. 1:22-cv-79-JTA
                                            )          (WO)
KILOLO KIJAKAZI,                            )
Acting Commissioner of Social Security,     )
                                            )
    Defendant.                              )

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), the claimant, Joe Ard ("Ard") brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Ard's claim for a period of disability and Disability Insurance Benefits ("DIB"). (R. 7-18.) The Court construes Ard's brief in support of his Complaint (Doc. No. 13) as a motion for summary judgment and the Commissioner's brief in opposition to the Complaint as a motion for summary judgment (Doc. No. 14). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).

After careful scrutiny of the record and the motions submitted by the parties, the Court finds that Ard's motion for summary judgment is due to be DENIED, the

---

[1] Document numbers as they appear on the docket sheet are designated as "Doc. No."

Commissioner's motion for summary judgment is due to be GRANTED, and the decision of the Commissioner is due to be AFFIRMED.

## I.   PROCEDURAL HISTORY AND FACTS

Ard is a 49-year-old male[2] with an eleventh-grade education who previously worked as a heavy equipment operator and general hardware salesperson. (R. 47-48, 55, 55, 76-77, 213.)[3] He alleged a disability onset of October 9, 2018, due to compressed fractures at L1, L2, L3 and T12, and bilateral wrist fractures. (R. 10, 14, 51, 212.)

On May 20, 2020, Ard protectively filed an application for a period of disability and DIB under Title II of the Social Security Act (42 U.S.C. §§ 401, *et seq.*). (R. 10, 196-197.) The application was denied, and Ard requested an administrative hearing. (R. 10.) Following the administrative hearing, the Administrative Law Judge ("ALJ") returned an unfavorable decision on August 5, 2021. (R. 7-18.) Ard sought review by the Appeals Council, and it denied his request. (R. 1-6.) Thus, the hearing decision became the final decision of the Commissioner.[4]

On February 14, 2022, Ard filed this civil action for judicial review of the Commissioner's final decision. (Doc. No. 1.) The parties have briefed their respective positions. (Docs. No. 13, 14, 18.) This matter is ripe for review.

---

[2] Ard was 49 years old at the time of the administrative hearing. (R. 47.)

[3] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 15.)

[4] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

## II.   STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo. Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the Commissioner

for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

### III.   STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB must prove that he is disabled. *See* 20 C.F.R. § 404.1505. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The evaluation is made at the hearing conducted by an administrative law judge ("ALJ"). *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant meets or medically

equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV.   ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Ard met the insured status requirements of the Social Security Act through December 31, 2023, but had not engaged in substantial gainful activity since the alleged onset date. (R. 12.) The ALJ determined that Ard suffers from the following severe impairments that significantly limit his ability to perform basic work activities: status post compression

fracture of lumbar spine, degenerative disc disease of the lumbar spine, status post bilateral distal radius fractures with open reduction internal fixation, cervical spine pain/cervicalgia, status post left talus fracture, hypertension, and gastroesophageal reflux disease ("GERD"). (R. 12.) The ALJ made no findings of non-severe impairments.

The ALJ concluded that Ard's physical impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 12.) The ALJ explained:

> [Ard's] back and neck disorders do not meet the requirements of listings 1.15 or 1.16[,] and [his] wrist and left ankle impairments do not meet the requirements of listings 1.18 or 1.23 because there is no evidence of an impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months and medical documentation of: (1) a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or (2) an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements and a documented medical need for a one-handed, handheld assistive device or a wheeled and seated mobility device; (3) or an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

(R. 13.) The ALJ determined "[t]here is also no evidence of nonunion or complex fracture, of the shaft of the humerus, radius, or ulna, under continuing surgical management directed toward restoration of functional use of the extremity." (R. 13.) The ALJ further determined that Ard's hypertension and GERD were not listed impairments and "do not result in the marked functional limitations that would suggest medical equivalence to any listed impairment." (R. 13.)

After consideration of the entire record, the ALJ determined Ard retains the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b),[5] "except that [Ard] cannot climb a ladder, rope or scaffold. [He] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. [He] can perform frequent reaching, fingering, feeling, and handling. He needs to avoid work at unprotected heights."  (R. 13.) In assigning this RFC, the ALJ found Ard's impairments could reasonably be expected to cause some of the alleged symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record …." (R. 14.)

Considering Ard's past relevant work as a general hardware salesperson, which is a light semi-skilled occupation, the ALJ determined that Ard is able to perform zthat work because "[t]his work does not require the performance of work-related activities precluded by [his] residual functional capacity (20 CFR 404.1565)." (R. 17.) Based on the foregoing, the ALJ determined Ard had not been disabled from the alleged onset date through the date of the hearing decision. (R. 17.) The ALJ concluded that Ard is not disabled under sections 216(i) and 223(d) of the Social Security Act. (R. 18.)

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

# V.    DISCUSSION

Ard presents two arguments in this appeal. First, he argues the ALJ committed reversible error by failing to explain how she considered both the supportability and consistency factors in addressing the medical opinions of three state agency medical consultants. Second, Ard argues the ALJ failed to properly evaluate his pain testimony and other subjective symptoms by overlooking evidence that supports a finding of disability.

The Court addresses each issue in turn.

## A.    Assessment of Prior Administrative Medical Findings

The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). "The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.' " *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* Social Security Ruling 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). These opinions are referred to as "prior administrative medical findings." *See* 20 C.F.R. § 404.1513(a)(5).[6]

---

[6] According to the regulations,

The regulations governing claims filed on or after March 27, 2017, abandon the requirement that the ALJ must give "good reasons" for the weight given medical opinions and prior administrative medical findings. *See Nix v. Saul*, Case No. 4:20-cv-00790-RDP, 2021 WL 3089309, at * 6 (N.D. Ala. July 22, 2021). The regulations now direct the ALJ to evaluate the persuasiveness of each medical source using the following five factors: (1) supportability, (2) consistency, (3) length of relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 416.920c(c). The ALJ must explain in her decision how she considered the factors of supportability[7] and consistency[8] in her determination of overall persuasiveness of each source. *Nix*, 2021 WL 3089309, at *6; 20

---

A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as:

> (i) The existence and severity of your impairment(s);
> (ii) The existence and severity of your symptoms;
> (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;
> (iv) Your residual functional capacity;
> (v) Whether your impairment(s) meets the duration requirement; and
> (vi) How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.

20 C.F.R. § 404.1513.

[7] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).

[8] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

C.F.R. § 416.920c(b)(2) ("[S]upportability ... and consistency ... are [t]he most important factors we consider ... [t]herefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."). The persuasiveness analysis should turn on whether "the medical source's opinion is (1) supported by the source's own records and (2) consistent with other evidence of record." *Podeszwa v. Kijakazi*, No. 3:21-CV-223-JTA, 2022 WL 4357434, at *7 (M.D. Ala. Sept. 20, 2022) (citation and internal quotation marks omitted). The ALJ is not required to explain how she considered the remaining factors unless the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 416.920c(b)(3).

Here, three state agency medical consultants, Dr. Alton James, Dr. Samuel Chastain and Dr. Gary Turner, completed Residual Functional Capacity assessments of Ard. Dr. James opined that Ard's exertional limitations were that he could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and perform unlimited pushing or pulling of hand and/or foot controls ("other than shown, for lift and/or carry"). (R. 84.) Dr. James also opined that Ard's postural limitations were occasionally climbing ramps/stairs, occasionally climbing ladders/ropes/scaffolds, unlimited balancing, occasionally stooping, occasionally kneeling, occasionally crouching and occasionally crawling. (R. 84-85.) Dr. James opined that Ard did not have any manipulative limitations, visual limitations, communicative limitations, or environmental limitations. (R. 85.)

Dr. Chastain opined identical exertional limitations for Ard, finding that he could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and perform limited pushing or pulling of hand and/or foot controls that is "[l]imited in [both] lower extremities." (R. 93.) Dr. Chastain's opinion of Ard's postural limitations also mirrored the limitations noted by Dr. James inasmuch as Dr. Chastain found that Ard could occasionally climb ladders/ropes/scaffolds, occasionally kneel, occasionally crouch, occasionally crawl, and perform unlimited balancing. (R. 93.) Unlike Dr. James, Dr. Chastain found that Ard could frequently climb ramps/stairs and frequently stoop. (R. 93.) Like Dr. James, Dr. Chastain opined that Ard did not have any manipulative limitations, visual limitations, communicative limitations, or environmental limitations. (R. 93.)

Dr. Turner's completion of the Residual Functional Capacity showed that Ard's functioning was more limited. Dr. Turner opined the same exertional limitations for Ard as Drs. James and Chastain, stating that he could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and perform unlimited pushing or pulling of hand and/or foot controls "other than shown for lift and/or carry." (R. 107-108.) Dr. Turner's opinion of the postural limitations for Ard also mirrored the limitations noted by Dr. James inasmuch as Dr. Turner opined that Ard could occasionally climb ramps/stairs, occasionally stoop, occasionally kneel, occasionally crouch, and occasionally crawl. (R. 108.) Dissimilar from the others, Dr. Turner opined that Ard could frequently balance and could never climb ladders/ropes/scaffolds. (R. 108, 109.) Similar to the others, Dr. Turner

11

opined that Ard did not have any manipulative limitations, visual limitations, or communicative limitations. (R. 109.) Yet, Dr. Turner opined that Ard had one environmental limitation in that he must avoid all exposure to hazards, including machinery and heights. (R. 109.)

In the hearing decision, the ALJ found the prior administrative medical findings partially persuasive and stated little more. The ALJ addressed these findings in merely three sentences, stating:

> Dr. James, Dr. Chastain, and Dr. Turner completed Physical Residual Functional Capacity Assessments in which they opined that [Ard] is able to perform a reduced range of light work (Exhibits 1A, 2A, 4A). The undersigned finds the opinions of Dr. James, Dr. Chastain, and Dr. Turner partially persuasive. The undersigned agrees with the ability, exertionally, to perform light work but has included somewhat different nonexertional limitations based on the totality of the evidence, including evidence received at the hearing level.

(R. 17.) However, the ALJ did mention these findings earlier in the hearing decision when she discussed her RFC finding, stating in relevant part:

> The undersigned finds, based on the record as a whole, that [Ard] is able to perform light work except that he cannot climb ladders, ropes or scaffolds or work at unprotected heights, he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and he can frequently reach, finger, feel and handle. These limitations account for [his] lumbar fractures, lumbar and cervical degenerative disc disease, his bilateral wrist fractures, and his left ankle fracture as well as hypertension and GERD. The ability to perform this range of work is supported by [his] treatment records, treatment history, activities of daily living, *and the State agency assessments*.

(R. 16) (emphasis added.) Nowhere in the hearing decision does the ALJ evaluate the consistency and supportability of these prior administrative medical findings, nor explain how she considered the other factors under 20 C.F.R. § 416.920c(b)(3). The Court finds this omission constitutes error.

Nevertheless, the Court further finds that such omission does not warrant remand because the error is harmless. Ard bears the burden of proving the ALJ's error is harmful and he has failed to satisfy his burden. *See Senn v. Colvin*, No. 3:11-CV-467-WKW, 2014 WL 4655432, at *2 (M.D. Ala. Sept. 16, 2014) (citations omitted); *Anderson v. Kijakazi*, No 1:20-cv-865-JTA, 2022 WL 3650619, at *4 (M.D. Ala. Aug. 24, 2022) (it is plaintiff's burden to show harmful error) (citation omitted). An explanation by the ALJ of the consistency and supportability – or any other factor under 20 C.F.R. § 416.920c(b)(3) – for each prior administrative medical finding would not change the ALJ's RFC or ultimate decision. The Court is able to discern that the ALJ fully considered the prior administrative medical findings in determining the RFC as most of the limitations opined by the consultants were incorporated by the ALJ. Indeed, the ALJ specifically incorporated the stronger – and thus more favorable – exertional and environmental limitations recommended by the state agency medical consultants into her decision. Ard thus has suffered no prejudice as a result of the error. *See Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) ("Errors may be harmless if they do not prejudice the claimant.") (citation omitted). Hence, any failure by the ALJ to articulate her evaluation of the consistency and supportability for each prior administrative medical finding – or any remaining factor under 20 C.F.R. § 416.920c(b)(3) –  does not warrant remand. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) ("We have also declined to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.") (citations omitted); *Turner v. Kijakazi*, Case No. 3:21-cv-756-KFP, 2023 WL 2583272, at

*4 (M.D. Ala. 2023) (finding ALJ's error to articulate her evaluation of opinion of medical source was harmless error and remand was not required).

Ard argues that "the ALJ failed to provide a logical bridge connecting her RFC height limitation to any opinion(s) she evaluated." (Doc. No. 13 at 9.) Contrary to Ard's assertion, the ALJ was "under no obligation to 'bridge' every piece of evidence [s]he finds inconsistent with a specific opinion.[ ] Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citing *Dyer*, 395 F.3d at 1211). The Court finds that the ALJ's hearing decision here does not prevent meaningful judicial review.

Ard also baselessly argues that *if* the ALJ relied on Dr. Turner's opinion, his finding that Ard "should 'avoid all exposure' to hazards (machinery, heights, etc.) renders Mr. Ard's past relevant work finding unsupported by substantial evidence." (Doc. No. 13 at 10.) The regulations however do not require the ALJ to adopt every part of a prior administrative medical finding that she finds persuasive in the RFC. *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-CV-1076-DCI, 2021 WL 2417084, at *2 (M.D. Fla. June 14, 2021) ("[A]n ALJ need not adopt every part of an opinion that the ALJ finds persuasive.") (citing 20 C.F.R. § 404.1520c(a)). The ALJ clearly did not incorporate Dr. Turner's limitation of avoiding exposure to hazardous machinery in the RFC and the Court cannot engage in guesswork as to the notional impact of such limitation on the ALJ's disability determination. *See Martin v. Kijakazi,* No. CV 120-169, 2022 WL 264889, at *4 (S.D. Ga. Jan. 7, 2022)*, report and recommendation adopted,* No. CV 120-169, 2022 WL

264549 (S.D. Ga. Jan. 27, 2022) (noting the court "must examine the administrative decision as delivered") (citations omitted).

Finally, Ard has failed to satisfy his burden of demonstrating that the ALJ's RFC decision is not supported by substantial evidence. The ALJ's decision indicates that she considered the medical evidence of record regarding Ard's impairments, singly and in combination, in fashioning her RFC. (R. 16) ("These [RFC] limitations account for [Ard's] lumbar fractures, lumbar and cervical degenerative disc disease, his bilateral wrist fractures, and his left ankle fracture as well as hypertension and GERD."). The ALJ thoroughly summarized the medical record, including the surgeries and conservative treatment of Ard's injuries; his complaints of pain with certain reported activities like shoveling, climbing under a house and pressure washing; how he was released to medium work in September 2019 by one of his medical sources; and the normal findings provided in many of the office visits. (R. 13-17.) The ALJ also assessed how Ard's reported activities supported the RFC. (R. 16-17.) Substantial evidence in the medical record supports the ALJ's conclusion. (R. 381, 385-386, 397, 413, 420-422, 463, 465-466, 472, 474, 480, 493, 495, 497-499, 567, 575, 579, 592-594.) Accordingly, the Court finds no reversible error.

B.     Evaluation of Pain Testimony and other Subjective Symptoms

Social Security Ruling ("SSR") 16-3p "provides guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. . . ." Soc. Sec. Ruling 16-3p, 82 Fed. Reg. 49462-03, 2017 WL 5180304 (Oct. 25, 2017). This ruling eliminates the use of the term "credibility" from the sub-regulatory policy and stresses that the ALJ "will not assess an

individual's overall character or truthfulness" but instead will "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the [ALJ's] evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities ...." *Id*. at 49463, 49467. "Whether before or after SSR 16–3p, an ALJ may choose to discredit a claimant's testimony about his or her symptoms." *Ring v. Berryhill*, 241 F. Supp. 3d 1235, 1252 (N.D. Ala. 2017), *aff'd sub nom. Ring v. Soc. Sec. Admin., Comm'r*, 728 F. App'x 966 (11th Cir. 2018) (per curiam).

When evaluating a claimant's symptoms, a two-step process must be used. *Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700, 703 (11th Cir. 2018) (per curiam) (citing SSR 16-3p, 82 Fed. Reg. 49462-03 at 49463). At step one, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p, 82 Fed. Reg. 49462-03 at 49463-64. At step two, the ALJ must evaluate the intensity and persistence of the symptoms and determine the extent to which they limit the claimant's ability to perform work-related activities. *Id*. at 49464-66. In doing so, the ALJ must examine the entire case record, including the objective medical evidence; the claimant's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the case record. *Id*. at 49464. The ALJ also must consider the factors set forth in 20 C.F.R. § 404.1529(c)(3), including (1) daily activities; (2) the location, duration, frequency, and

intensity of pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve his pain or symptoms other than treatment; and (7) any other factors concerning the claimant's functional limitations and restrictions due to his pain or symptoms. *Id*. at 49465-66; *see* 20 C.F.R. § 404.1529(c)(3). The ALJ must examine the claimant's statements about the intensity, persistence, and limiting effects of symptoms in relation to all other evidence and consider whether they are consistent with the record as a whole. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018)[9] (per curiam) (citing SSR 16-3p, 81 Fed. Reg. 14166, 14170 (Mar. 16, 2016)); *see also* 20 C.F.R. § 404.1529(c)(4).

If the ALJ discredits a claimant's subjective testimony, she "must articulate explicit and adequate reasons for doing so or the record must be obvious" as to the finding. *Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 832 (11th Cir. 2013) (per curiam) (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). When the ALJ's reasons for discrediting a claimant's statements about pain or other symptoms are clearly articulated and supported by substantial evidence in the record, a reviewing court will not disturb the ALJ's findings. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). "Where proof of a disability is based upon subjective evidence and a credibility

---

[9] In *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991), the Eleventh Circuit "articulated the 'pain standard,' which applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). The pain standard followed in the Eleventh Circuit "is consistent with the parameters that SSR 16-3p sets forth." *Griffin v. Berryhill*, No. 4:15-cv-0974-JEO, 2017 WL 1164889, at *6 n.10 (N.D. Ala. March 29, 2017).

determination is a critical factor in the decision, if the ALJ discredits the claimant's testimony as to his subjective symptoms, the ALJ must either explicitly discredit such testimony or the implication from the ALJ's opinion must be so clear as to amount to a specific credibility finding." *Martinez v. Comm'r of Soc. Sec.*, No. 21-12116, 2022 WL 1531582 at *2 (11th Cir. May 16, 2022) (citing *Foote*, 67 F.3d at 1562). "Subjective complaint credibility is the province of the ALJ." *Williams v. Kijakazi*, No. 2:20-CV-277-KFP, 2022 WL 736260 at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell*, 771 F.3d at 782).

Here, in making the RFC finding, the ALJ stated that she considered all of Ard's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. 13.) The ALJ also stated that she considered the "medical opinion(s) and prior administrative finding(s) in accordance with the requirements of 20 CFR 404.1520c." (R. 13.) The ALJ then described the two-step process required by SSR 16-3p. (R. 13-14.) Thereafter, the ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that [Ard's] medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, [Ard's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 14.)

In reaching her conclusion, the ALJ extensively discussed the medical evidence of record, from Ard's work-related accident in October 2018 to the treatment of Ard's right

wrist by his hand surgeon in May 2021. (R. 14-16.) The ALJ also discussed Ard's hearing

testimony and noted how his testimony was not consistent with the medical record.

> At the hearing, [Ard] testified that he uses a back brace every day, taking it off only at bedtime, and that he uses a cane daily. [Ard] was treated with a back brace immediately after the accident but by April 2019, he was instructed to wear the back brace only as needed and not at all times. There is no evidence in the record that [Ard] was prescribed a cane and no evidence in the record of a gait abnormality or loss of strength in the lower extremities to support the need for a cane. [Ard's] gait at his most recent office visit in May 2021 was described as normal with no mention of an assistive device. There is no evidence in the record that [Ard] presented to any other office visits with a cane, to the emergency room with a cane or to the consultative evaluation with a cane.

(R. 16.) The ALJ further noted how Ard was evaluated in September 2020 by Dr. Banner

and the notations in the medical record were inconsistent with Ard's subjective statements.

(R. 16.)

> Dr. Banner evaluated [Ard] on a consultative basis in September 2020 (Exhibit 6F). [Ard] reported having multiple injuries secondary to a work-related accident. He reported falling approximately 30 feet. Hospital records related to the accident indicate that [Ard] fell 10 to 12 feet. [He] did not present wearing a back brace or using an assistive device.

(R. 16.) The ALJ explained how she concluded that Ard could perform a reduced range of

light work despite his impairments and subjective symptoms.

> The ability to perform this range of work is supported by [Ard's] treatment records, treatment history, activities of daily living, and the State agency assessments. [Ard] injured his back, wrists and left ankle in October 2018. His left ankle fracture has healed well with no surgery. [Ard's] back pain was initially treated conservatively with a back brace and physical therapy. Two of the three compression fractures were slow to heal and in August 2019, he underwent two level kyphoplasty. [Ard] had surgery on his bilateral wrists at the time of the accident. His left wrist has done well. [Ard] has continued to complain of some pain and numbness in his right wrist/hand. [He] was found to be at maximum medical improvement in September 2019 and he was released to medium level work. [Ard] had no follow up medical treatment after being released to medium work for more than one year. He has

complained of some ongoing back and right wrist pain as well as neck pain. This is accounted for with the lifting and carrying restrictions inherent in light work, the postural restrictions, and the restrictions on reaching and using his hands. The consultative evaluation findings from September 2020 were fairly minimal. [Ard] reported shoveling, climbing under a house, and pressure washing his driveway. He worked on things in his shed, cut the grass and he goes fishing (Exhibit 4E), all of which supports the residual functional capacity.

(R. 16-17.)

The Court finds that the ALJ sufficiently explained her reasoning for discrediting Ard's subjective complaints and symptoms. *See Herron v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 781, 786 (11th Cir. 2016) (finding that the ALJ adequately explains her reasoning for discrediting the claimant's testimony when that testimony is not fully supported by the medical evidence, when the ALJ fully reviews and summarizes the claimant's medical history, and when the claimant's treating physician noted that the claimant's chronic low back pain was controlled by medication, and that claimant's pain and range of motion was relatively normal). The ALJ based her decision on inconsistencies between Ard's testimony and the entire body of evidence within the medical record. Ard testified at his hearing that he wears a back brace and wrist braces and uses a cane. (R. 50.) He also testified that he wears the brace on his right wrist often due to arthritis, regularly uses the cane to help him balance while walking, and daily wears his back brace. (R. 50-51.) The evidence in the medical record does not establish that Ard presented to every medical appointment using these assistive devices, nor that such devices were prescribed by medical sources for constant daily use. (R. 426-767.) Further, although Ard's treating physicians have consistently prescribed medication for pain management, he testified that

he does not take the medication because the medication makes him "itch" and he just does not "like them." (R. 71.)

Ard argues that the ALJ improperly considered his lack of treatment and refusal to seek additional treatment due to his lack of insurance. (Doc. No. 13 at 14.) Ard is factually correct in that he testified that he did not have insurance (R. 74), and the ALJ noted in the hearing decision Ard's lack of and rejection of medical treatment. (*See* R. 15) ("There is no documented follow up treatment in the record for back or wrist pain after September 2019 until more than a year later); (*Id.*) ("Dr. Maddox recommended an epidural but [Ard] declined due to cost."). Notwithstanding, Ard's argument is without merit.

"[R]efusal to follow prescribed medical treatment without a good reason will preclude a finding of disability," and "poverty excuses noncompliance." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)).

> Nevertheless, if the claimant's failure to follow medical treatment is not one of the principal factors in the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error. *See id.* (holding that ALJ's failure to consider claimant's ability to pay was not reversible error because the ALJ's decision primarily was based on factors other than the claimant's failure to obtain medical treatment).

*Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011) (citing *Ellison*, 355 F.3d at 1275). Here, the ALJ's decision does not show that Ard's refusal to have an epidural nor the small gap in his medical treatment "play[ed] a major role in the ALJ's decision;" thus "any error in considering that [information] was harmless." *Id.* (citing *Ellison*, 355

F.3d at 1275). Indeed, the ALJ's decision shows that the contrast between Ard's subjective complaints and the medical evidence played the major role in the decision. (R. 14.)

Ard further argues that "[t]he ALJ's omission of evidence supporting disability shows the ALJ improperly relied only upon evidence that supported her conclusion, thus rendering her finding unsupported by substantial evidence." (Doc. No. 15.) The Court disagrees. The ALJ discussed evidence both in favor of and against a finding of disability. "Although [Ard] may have preferred that the ALJ cite to or give more weight to additional evidence from the medical record, there is no requirement that the ALJ must cite to each piece of evidence when making her decision, and the Court may not reweigh the evidence considered by the ALJ to match [Ard's] preferences." *A.D.D. v. Kijakazi*, No. 5:22-cv-241 (CHW), 2023 WL 5997271, at *7 (M.D. Ga. 2023) (citing *Dyer*, 395 F.3d at 1211; *Mitchell*, 771 F.3d at 782). In other words, Ard's mere identification of evidence that supports his subjective complaints does not establish that remand is warranted. The evidence here provides substantial support for the ALJ's evaluation of Ard's symptoms, and the record reflects that the ALJ sufficiently addressed Ard's subjective symptoms in accordance with the regulations. The Court finds no reversible error.

## VI.   CONCLUSION

After review of the administrative record, and considering all of the arguments, the Court finds the Commissioner's decision to deny Ard disability is supported by substantial evidence and is in accordance with applicable law. Hence, it is ORDERED as follows:

1. The claimant's motion for summary judgment (Doc. No. 13) is DENIED.

2. The Commissioner's motion for summary judgment (Doc. No. 14) is

   GRANTED.

3. The decision of the Commissioner is AFFIRMED.

A separate judgment will issue.

DONE this 25th day of September, 2023.


_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE